UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| S.S., *et al.*, | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
|     v. | ) |
| | )    Civil Action No. 3:14-cv-30116-MGM |
| CITY OF SPRINGFIELD, | ) |
| MASSACHUSETTS, *et al.* | ) |
| | ) |
|     Defendants. | ) |
| _____) | |

# STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA

## INTRODUCTION

Plaintiffs (S.S., by his mother, S.Y., on behalf of similarly situated students, and the Parent/Professional Advocacy League) allege that Defendants (including the City of Springfield and the Springfield Public Schools) have violated Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq*. ("Title II" or "the ADA"), by "consign[ing] hundreds of children with a mental health disability to the separate and inferior [Springfield] Public Day School." (Complaint at 1.) Among other things, Plaintiffs allege that the Public Day School is comprised of physically segregated buildings where children with mental health disabilities are denied access to nearly all extracurricular activities that are available in neighborhood schools, including (but not limited to) afterschool sports, clubs, and activities; are subjected to harmful forced isolation and dangerous physical restraints that risk serious injury or death; and are regularly subjected to unduly punitive responses to even minor infractions of school rules and routine disciplinary matters, including arrest by armed, uniformed Springfield Police Officers.

1

(Complaint at 14-15.) Defendants have moved to dismiss the Complaint, arguing, *inter alia*, that Plaintiffs were required to bring a claim under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, in lieu of or alongside their ADA claim in this federal action in order to satisfy administrative exhaustion requirements, and that the Title II implementing regulations that support Plaintiffs' ADA count are not enforceable via a private right of action.

Defendants are wrong on both points. The United States respectfully submits this Statement of Interest to clarify the proper interpretation of the ADA as to these issues.[1] First, Title II of the ADA includes no administrative prerequisites for filing suit in federal court, and while the ADA and IDEA provide complementary protections for many students with disabilities, they are not identical in purpose or scope and impose distinct obligations on school districts in furtherance of their respective statutory mandates. Therefore, presuming fulfillment of any administrative exhaustion requirements under IDEA, a plaintiff whose facts implicate both IDEA and the ADA may opt to proceed in federal court under both statutes. Or, as here, that plaintiff may choose to pursue a complaint only under the ADA, which may require different or additional measures to avoid discrimination against children with disabilities than the measures that are required to comply with IDEA. Second, the Title II regulations implicated by the Complaint directly execute the ADA's nondiscrimination mandate. These regulations have been construed and given deference by federal courts for over two decades as appropriately implementing Title II, and clearly give rise to a private right of action.

### I.     INTEREST OF THE UNITED STATES

Under 28 U.S.C. § 517, the Attorney General may send any officer of the Department of Justice "to attend to the interests of the United States in a suit pending in a court of the United

---

[1] The Department takes no position on any other issues currently before the Court.

States . . . ."  The Attorney General has an interest in supporting the ADA's proper interpretation and application; furthering the statute's explicit congressional intent to provide clear, strong, consistent, and enforceable standards addressing discrimination against individuals with disabilities; and ensuring that the Federal government plays a central role in enforcing the standards established in the ADA.  *See* 42 U.S.C. § 12101(b).  Accordingly, the United States respectfully requests that the Court consider the interpretation and application of Title II, as set forth in this Statement of Interest, in resolving Defendants' Motion to Dismiss.

## II.     DISCUSSION

### A. Where Both IDEA and the ADA Are Implicated, a Plaintiff May Pursue an ADA Claim Exclusively Once the Plaintiff Has Fulfilled IDEA's Administrative Exhaustion Requirements.

In support of the Motion to Dismiss, Defendants argue that Plaintiffs cannot bring their ADA claim before this Court because they failed to exhaust administrative procedures required under the IDEA.  More specifically, Defendants appear to argue that Plaintiffs' failure to bring an IDEA claim in Federal court, in lieu of or in addition to the ADA claim, constitutes a failure to exhaust and that therefore Plaintiffs' ADA claim must be dismissed.  The ADA, itself, does not have administrative exhaustion requirements.  To the extent that the ADA and IDEA are simultaneously implicated, IDEA's administrative procedures are specifically addressed in the IDEA statute, which provides a rule of construction for matters that involve other sources of law.  Specifically, 20 U.S.C. § 1415(l) states:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsection (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

3

Subsections (f) and (g) of 20 U.S.C. § 1415, in turn, set out the procedures for the impartial due process hearing conducted by the State educational agency or by the local educational agency, and (where applicable) procedures for appeal of the decision of the local educational agency to the State educational agency.  IDEA includes no other restrictions on the right of an individual to assert an ADA claim in federal court.[2]

In this Statement of Interest, the United States takes no position on whether or not the facts of this case demonstrate that administrative exhaustion under IDEA occurred.[3]  Assuming, however, that IDEA exhaustion has occurred, there is simply no basis for Defendants' contention that an IDEA claim that *could* be litigated once the matter has been elevated to Federal court *must* be litigated.  Nothing subsequently bars a litigant from bringing an ADA claim available to it in a United States District Court while leaving aside distinct and independent claims grounded in similar – or even identical – underlying facts and circumstances.

Moreover, while the First Circuit has frowned on attempts to circumvent IDEA requirements or to gain access to damages not available under IDEA by re-characterizing IDEA claims as ones under other statutes, it has also made clear, relying on the IDEA language of 20

---

[2] Notably, 20 U.S.C. § 1415(l) does not incorporate or require compliance with 20 U.S.C. § 1415(i), which establishes the right to bring a civil action under IDEA in state or federal court and sets forth procedures related thereto.

[3] While taking no position on its ultimate validity, we note that Defendants' exhaustion argument appears muddled.  Defendants assert that "the I.D.E.A. claim is not appealed.  As such, there has not been exhaustion as required."  (Motion at 16.)  But this statement directly contradicts other, seemingly dispositive assertions in Defendants' Motion, such as that "Plaintiffs *have followed the appeal procedures* applicable to S.S.'s [Individualized Education Program] through the [Bureau of Special Education Appeals] concerning the appropriateness of his placement under the regulations referenced in those criteria."  (Motion at 13 (emphasis added).)  Further, Defendants note that Plaintiffs invoked the ADA during the administrative process, but the Bureau of Special Education Appeals ("B.S.E.A.") hearing officer "ruled that the B.S.E.A. does not have jurisdiction under the A.D.A." (Motion at 14.)

U.S.C. § 1415(l), that IDEA does not restrict rights and remedies that are independently available through other sources of law.  *See Diaz-Fonseca v. Puerto Rico*, 451 F.3d 13, 29 (1st Cir. 2006).  A plaintiff's right to pursue an ADA claim independently of an IDEA claim is consistent with the fact that these two statutes differ in numerous regards, including in purpose, scope, and rights afforded.

### 1. IDEA Ensures a Free Appropriate Public Education.

IDEA is a special education statute intended to ensure that eligible children with disabilities have available a "free appropriate public education that emphasizes special education and related services designed to meet their unique needs. . . ." 20 U.S.C. § 1400(d)(1)(A); *see* 20 U.S.C. § 1401(3)(a); *School Comm. of Burlington v. Dep't of Educ. of Mass.*, 471 U.S. 359, 367 (1985).  A central element of IDEA, and the means to provide a free appropriate public education (FAPE), is the development and implementation of an Individualized Education Program (IEP) for each eligible child with a disability.  20 U.S.C. § 1414(d)(1)(A).  The IEP must identify, *inter alia*, the special education and related services that will address that child's unique needs, including the child's education and participation with children who do not have disabilities in the general education curriculum and in extracurricular and other nonacademic activities; the child's present levels of academic achievement and functional performance; measurable annual goals; descriptions of progress measures and periodic reporting; and the child's participation in regular or alternate State and districtwide assessments.  20 U.S.C. 1414(d)(1)(A)(i).

A FAPE under IDEA must provide the student a "meaningful" educational benefit.  *See Dracut Sch. Comm. v. Mass. Bureau of Special Educ. Appeals,* 737 F. Supp. 2d 35, 50 (D. Mass. 2010) (citing *N.B. v. Hellgate Elementary Sch. Dist.*, 541 F.3d 1202, 1210 (9th Cir. 2008)).  IDEA does not set out a substantive standard prescribing the level of education to be accorded to

eligible children.  *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 189 (1982).  It does, however, require that an IEP developed for an eligible student is "reasonably calculated to enable the child to receive educational benefits."  *Id.* at 206-07.  To establish a violation of IDEA as it relates to a student's educational program, a plaintiff can show that the IEP will not provide the student with a FAPE, or that procedural violations resulted in denial of a FAPE.  *See Hellgate*, 541 F.3d at 1208.

### 2. Title II of the ADA Prohibits Discrimination Against Students with Disabilities.

The ADA is a comprehensive civil rights and equal opportunity statute.  The Congressional findings contained in the ADA state that "discrimination against individuals with disabilities persists in such critical areas as . . . education. . . ."  42 U.S.C. § 12101(a)(3).  The broad remedial purposes of the ADA include "provid[ing] a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).  The ADA requires that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

Under Title II of the ADA, a plaintiff must show that (1) he or she is a qualified individual with a disability; (2) he or she was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.  *Parker v. Universidad de Puerto Rico*, 225 F.3d 1, 5 (1st Cir. 2000) (vacating judgment in favor of defendants because the evidence was sufficient to establish a prima facie ADA case).  In addition to "outright intentional exclusion," the ADA also protects

against additional forms of discrimination, including the discriminatory effects of architectural and communication barriers, failure to make modifications to existing facilities and practices, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities.  42 U.S.C. § 12101(a)(5); *see also, e.g., Olmstead v. L.C.*, 527 U.S. 581, 597 (1999); *Rolland v. Cellucci*, 52 F. Supp. 2d 231, 238 (D. Mass. 1999) ("[A]n exclusion from services may be actionable whether or not the public entity intended to discriminate.  Otherwise, [the ADA's nondiscrimination mandate at 42 U.S.C. § 12132] would be rendered meaningless."); *Helen L. v. DiDario*, 46 F.3d 325, 335 (3d Cir. 1995) ("[W]e will not eviscerate the ADA by conditioning its protections upon a finding of intentional or overt 'discrimination.'").  Finally, contrary to Defendants' assertion in their Motion at page 13, a plaintiff is not required, as an element of an ADA claim, to demonstrate a denial of FAPE.

> **3.  A School District Can Provide FAPE Under IDEA and Still Violate the ADA.**

The ADA's broad, non-discrimination mandate may require school districts to take different or additional steps to prevent discrimination against students with disabilities than the measures required by IDEA.  The Ninth Circuit recently addressed the interplay of these two statutes in a case involving the question of whether school districts' compliance with their obligations to deaf or hard-of-hearing children under IDEA also necessarily establishes compliance with their obligations to those children under the ADA.  *K.M. v. Tustin Unified Sch. Dist.*, 725 F.3d 1088 (9th Cir. 2013); *see also* Brief of the United States as Amicus Curiae Supporting Appellant and Urging Remand in *K.M. v. Tustin Unified Sch. Dist.*, No. 11-56259, in the United States Court of Appeals for the Ninth Circuit, filed Jan. 24, 2012, *available at* http://www.justice.gov/crt/about/app/briefs/kmtustinbr.pdf (last visited August 14, 2014).  The district court had granted summary judgment for the defendants, finding that because the school

districts at issue had fully complied with IDEA, they had satisfied the requirements of the ADA. 725 F. 3d at 1092. The Ninth Circuit found otherwise: "We do not find in either statute an indication that Congress intended the statutes to interact in a mechanical fashion in the schools context, automatically pretermitting any Title II claim where a school's IDEA obligation is satisfied." *Id.* The *Tustin* Court recognized that "IDEA and Title II differ in both ends and means," noting that IDEA set the "floor of access to education" to the children in that case, whereas Title II and its implementing regulations "require public entities to take steps towards making existing services not just accessible, but *equally* accessible to people with communication disabilities." 725 F. 3d at 1092 (original emphasis); *see also Rowley*, 458 U.S. at 198, 201 (recognizing a "basic floor of opportunity" provided by IDEA and noting that IDEA's requirement to provide specialized education services does not equate to providing "equality of opportunity or services."). *Tustin* thus recognizes that the ADA is not merely repetitive of IDEA's protections. As explained in *Tustin*, the ADA's broad promise of equal opportunity may require school districts to take different or additional measures to avoid discrimination against children with disabilities than the measures that are required under IDEA.[4]

Against this framework, a plaintiff's decision, as here, to seek relief under the ADA but not IDEA in a Federal court is plainly his or her choice. As in *Tustin*, Plaintiffs here are not

---

[4] The United States notes Defendants' reliance on *I.M. v. Northampton Public Schools*, 869 F. Supp. 2d 174, 186 (D. Mass. 2012), for the proposition that plaintiffs "cannot disguise an IDEA claim in other garb where the essence of the claim is one stated under the IDEA for denial of FAPE" (internal quotation marks and citations omitted). *I.M.* raised similar IDEA/ADA interplay issues as those raised in *Tustin*, but the *I.M.* Court reached the opposite conclusion. *Id.* at 188 (holding that the plaintiffs' ADA claim necessarily fails, "the court having concluded, as had the hearing officer, that I.M. had not been denied a FAPE"). The *I.M.* decision does not reflect the Department of Justice's interpretation of the relationship between IDEA and the ADA, as explained in this Statement of Interest. *See also* Brief of the United States as Amicus Curiae Supporting Appellant and Urging Remand in *K.M. v. Tustin Unified Sch. Dist.*, No. 11-56259, in the United States Court of Appeals for the Ninth Circuit, filed Jan. 24, 2012, *available at* http://www.justice.gov/crt/about/app/briefs/kmtustinbr.pdf (last visited August 14, 2014).

pursuing a denial of FAPE claim.  Rather, the theory of the case is that Defendants have violated the equal opportunity principles fundamental to the ADA.  Namely, Plaintiffs allege that the affected students were denied "an opportunity to participate in or benefit from educational services that is equal to that afforded other students," both in the classroom and outside of it, for instance through exclusion from extracurricular activities available to other students; were further denied "educational services that are as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided other students;" and were also denied "the opportunity to receive educational programs and services in the most integrated setting appropriate to their needs."  (Complaint at 19-20.)  The Defendants' IDEA FAPE obligations, even if satisfied, do not foreclose the ADA claims in this case.

Indeed, even if Defendants were correct that Plaintiffs were required to bring an IDEA claim in federal court at this time (which, as discussed above, they are not), their argument would not eliminate Plaintiffs' independent ADA claim, but would just require Plaintiffs to add an IDEA claim to this case.  Each cause of action would still be independent and would have to be analyzed under the respective statutory scheme and standards.  Adding an IDEA claim would not undermine or subsume the independent ADA claim, or limit the ADA claim to the IDEA requirements or remedies.  *See, e.g., K.M. v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1097 (9th Cir. 2013) ("Congress has specifically and clearly provided that the IDEA coexists with the ADA and other federal statutes, rather than swallowing the others.").

In sum, Plaintiffs' allegations cannot be dismissed as "disguised" IDEA claims.  Rather, Plaintiffs have opted to forego IDEA's special education-related protections and to instead

invoke the ADA's nondiscrimination and equal opportunity promises. The decision to choose among the available bases for relief is, quite simply, Plaintiffs' prerogative.

**B. The ADA Implementing Regulations at Issue in Plaintiffs' Complaint Effectuate the Nondiscrimination Mandate of the ADA and Support a Private Right of Action.**

In their Motion, Defendants argue that the allegations of the Complaint "do not provide a sufficient basis for establishing a private right of action." (Motion at 11.) They are mistaken. The ADA regulations implicated by the Complaint are intimately linked to the ADA statutory language and directly and faithfully execute the ADA's nondiscrimination mandate. Consequently, the ADA regulations can be enforced through the private right of action established under the ADA.

Title II of the ADA broadly prohibits disability-based discrimination by state and local governments, providing that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. It provides a private right of action to enforce its requirements, by conferring upon any person alleging a violation of Title II the "remedies, procedures, and rights" of the Rehabilitation Act of 1973 ("Rehabilitation Act") which, in turn, incorporates the rights and remedies of Title VI of the Civil Rights Act. 42 U.S.C. § 12133; 29 U.S.C. § 794a(a)(2).

Congress directed the Department of Justice to promulgate regulations implementing Title II's prohibition against discrimination   The regulations set forth in 28 C.F.R. § 35.130 do just that. As explained in the Department of Justice's Guidance on ADA Regulation on Nondiscrimination on the Basis of Disability in State and Local Government Services ("Title II Guidance"), Paragraph (a) of 28 C.F.R. § 35.130 "restates the nondiscrimination mandate of [Title II] of the ADA. The remaining paragraphs in § 35.130 establish the general principles for

10

analyzing whether any particular action of the public entity violates this mandate." 28 C.F.R. pt. 35, app. B, at 193. These provisions of 28 C.F.R. § 35.130 fall squarely within the scope of the ADA and are merely an interpretation of the statute.[5]

Indeed, Congress directed the Attorney General to promulgate such regulations, consistent with the ADA and with pre-existing regulations implementing Section 504 of the Rehabilitation Act. 42 U.S.C. § 12134. The ADA regulations implicated by the Complaint and contained in 28 C.F.R. § 35.130 are the same as the implementing regulations Congress was referencing under Section 504. By its express reference to the Section 504 regulations, Congress similarly intended that discrimination prohibited under Title II encompass the forms of discrimination set forth in 28 C.F.R. § 35.130.

The regulations referenced in the complaint are among the regulations promulgated to implement Title II's prohibition against discrimination, including 28 C.F.R. §§ 35.130(b)(1)(ii) & (iii), which provide that a public entity, in providing any aid, benefit, or service, may not on the basis of disability "[a]fford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others" or "provide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others" (Complaint at 19, Para. 83(a) & (b)); and 28 C.F.R. § 35.130(d), which requires public entities to provide services in the most

---

[5] As the agency charged by Congress with enforcing and implementing regulations under the ADA, the Department of Justice's interpretation of Title II and its regulations is entitled to substantial deference. *See, e.g., City of Arlington, Tex. v. FCC*, 133 S. Ct. 1863, 1868 (2013) (holding that *Chevron* deference applies where the agency's interpretation of a statute is based on a permissible construction of that statute); *Olmstead v. L.C.*, 527 U.S. 581, 598 (1999) ("The well-reasoned views of the agencies implementing a statute constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.") (internal quotation marks omitted).

integrated setting appropriate to the needs of individuals with disabilities (Complaint at 20, Para. 83(c)). The Complaint also implicates 28 C.F.R. § 35.130(b)(7), requiring that public entities "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity" (Complaint at 20, Para. 83(d)); and 28 C.F.R. § 35.130(b)(3)(ii), which prohibits public entities from "utilizing methods of administration that have the effect of defeating or substantially impairing the objectives of the public entity's program with respect to individuals with disabilities" (Complaint at 20, Para. 83(e)).

       Each of these regulations fall within the ambit of and provide an authoritative interpretation of the ADA, and consequently violations of these provisions are as enforceable via a private right of action as the underlying statute itself. In *Alexander v. Sandoval*, 532 U.S. 275, 284 (2001), the Supreme Court made clear that where a statute contains a private right of action to enforce its requirements, regulations validly and reasonably interpreting those requirements also give rise to a private right of action. *Id.* at 284. Indeed, because such regulations "authoritatively construe the statute itself," it is "meaningless to talk about a separate cause of action to enforce the regulations apart from the statute." *Id.* In such a scenario, there is no need for an independent analysis of the regulations' enforceability, because "[a] Congress that intends the statute to be enforced through a private cause of action intends the authoritative interpretation of the statute to be so enforced as well." *Id.*

       Furthermore, courts have also long construed these regulations as an authoritative interpretation of the ADA. *See, e.g., Frederick L. v. Dep't of Pub. Welfare*, 157 F. Supp. 2d 509, 538-39 (E.D. Pa. 2001) (finding a private right of action to enforce both the "most integrated

setting" provision of 28 C.F.R. § 35.130(d) and the "methods of administration" regulation at 28 C.F.R. § 35.130(b)(3)(i)); *Brantley v. Maxwell-Jolly*, 656 F.Supp.2d 1161, 1175-76 (N.D. Cal. Sep 10, 2009) (holding that a private right of action exists to enforce the "methods of administration" regulations at 28 C.F.R. § 35.130(b)(3)(i) and (ii), and compiling further case law similarly holding); *Helen L. v. DiDario*, 46 F.3d 325, 332 (3d Cir. 1995) (noting that 28 C.F.R. § 35.130(d) "has the force of law.").[6]

Defendants' reliance on the First Circuit's decision in *Iverson v. City of Boston*, 452 F.3d 94 (1st Cir. 2006), to question the existence of a private right of action to enforce the Title II regulations at 28 C.F.R. § 35.130 is misplaced. (*See* Motion at 11-13.) The *Iverson* plaintiffs claimed violations of two discrete and specific Title II regulations: the so-called self-evaluation regulation at 28 C.F.R. § 35.105, which directed all public entities, by April 5, 1994, to evaluate their current services, policies, and practices, and the effects thereof, for compliance with Title II; and the transition plan regulation at 28 C.F.R. § 35.150(d), which, among other things, required qualifying public entities to develop, within six months of January 26, 1992, a transition plan setting forth the steps necessary to complete structural changes to existing facilities to accomplish program accessibility. *See id.* at 96, 99-100. The *Iverson* Court held that the self-

---

[6] Courts have also found other Title II regulations, not at issue here, to give rise to a private right of action. *See, e.g., Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 913 (6th Cir. 2004) (finding a private right of action to enforce 28 C.F.R. § 35.151, which requires that facilities constructed for the use of public entities be designed and constructed so that they are readily accessible to and usable by individuals with disabilities, if construction was commenced after January 26, 1992); *Nat'l Org. on Disability v. Tartaglione*, Civil Action No. 01-1923, 2001 U.S. Dist. LEXIS 16731, at *16-22 (E.D. Pa. Oct. 11, 2001) (finding a private right of action to enforce 28 C.F.R. § 35.151); *Access Living v. Chicago Transit Auth.*, 2001 U.S. Dist. LEXIS 6041, No. 00 C 0070 (N.D. Ill. May 9, 2001) ("the [Title II] regulations relied on by plaintiffs do not . . . expand the meaning of discrimination. Rather, the regulations at issue here simply clarify the definition of discrimination (what accommodations are reasonable), and therefore are not an invalid basis under which to bring suit. . . .").

evaluation and transition plan regulations "may not be enforced through the instrumentality of the private right of action available under Title II." *Id.* at 102. *But see Chaffin v. Kan. State Fair Bd.*, 348 F.3d 850, 857-60 (10th Cir. 2003) (holding that the self-evaluation and transition plan regulations are enforceable via a private right of action).

The Court's holding is grounded in the reasoning that the self-evaluation and transition plan regulations facilitate ADA compliance, but that a public entity may fail to comply with either regulation and still be in complete harmony with Title II requirements. The Court reasoned that a violation of the self-evaluation or transition plan regulations, in and of themselves, does not constitute discrimination against or cause harm to individuals with disabilities in violation of Title II. In contrast, the regulations at 28 C.F.R. § 35.130, as explained above, establish principles for analyzing whether any particular action of the public entity violates Title II's nondiscrimination mandate. 28 C.F.R. pt. 35, app. B, at 193; *Iverson*, 452 F.3d at 100-01 (referencing *Sandoval* to note that "a regulation that simply effectuates an express mandate contained in the organic statute may nonetheless be enforceable through the private right of action contained in the statute itself."). In other words, noncompliance with any of the regulations at 28 C.F.R. § 35.130 *is itself* a violation of Title II.

Where, as here, Plaintiffs' Complaint alleges facts that, if taken as true, violate regulations that directly derive from and reasonably implement the nondiscrimination provisions of Title II, a claimed violation of any one of these regulations is one and the same as a violation of Title II. *See Sandoval*, 532 U.S. at 284. And each is as enforceable via a private right of action as the statutory language itself.

## CONCLUSION

Based on the allegations in the Complaint, Plaintiffs challenge practices and invoke rights under the Americans with Disabilities Act. Presuming satisfaction of applicable administrative exhaustion requirements under IDEA, it is within Plaintiffs' purview solely to invoke the rights guaranteed by the ADA, to the exclusion of other statutes also implicated by the allegations. Further, a private right of action flows from the ADA implementing regulations at 28 C.F.R. § 35.130, as they validly and reasonably effectuate Title II's nondiscrimination mandate.

Respectfully submitted this 27th day of August, 2014.

ERIC H. HOLDER, JR.
Attorney General of the United States

| | |
|---|---|
| CARMEN M. ORTIZ<br>United States Attorney<br>District of Massachusetts | MOLLY J. MORAN<br>Acting Assistant Attorney General<br>Civil Rights Division |
| /s/ Jennifer A. Serafyn<br>JENNIFER A. SERAFYN<br>Assistant United States Attorney<br>District of Massachusetts<br>John Joseph Moakley Federal Courthouse<br>One Courthouse Way, Suite 9200<br>Boston, MA 02210<br>Telephone: (617) 748-3188<br>jennifer.serafyn@usdoj.gov | EVE L. HILL<br>Deputy Assistant Attorney General<br>Civil Rights Division<br><br>REBECCA B. BOND<br>Chief, Disability Rights Section<br>ANURIMA BHARGAVA<br>Chief, Educational Opportunities Section<br><br>ANNE RAISH<br>Deputy Chief, Disability Rights Section<br>RENEE WOHLENHAUS<br>Deputy Chief, Educational Opportunities Section<br><br>/s/ Anne E. Langford<br>ANNE E. LANGFORD<br>Trial Attorney<br>Disability Rights Section<br>JOSEPH J. WARDENSKI<br>Trial Attorney<br>Educational Opportunities Section<br>Civil Rights Division<br>United States Department of Justice<br>950 Pennsylvania Avenue, N.W. (NYA)<br>Washington, D.C. 20530<br>Telephone: (202) 616-2727<br>anne.langford@usdoj.gov<br><br>*Counsel for the United States of America* |

**CERTIFICATE OF SERVICE**

I hereby certify that this Statement of Interest of the United States of America, filed through the CM/ECF system on this 27th day of August, 2014, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF). I am not aware of any non-registered participants, so electronic filing is the sole means of service of this document.

/s/ Anne E. Langford
ANNE E. LANGFORD
Trial Attorney
Disability Rights Section
Civil Rights Division
United States Department of Justice
950 Pennsylvania Avenue, N.W. (NYA)
Washington, D.C. 20530
Telephone: (202) 616-2727
anne.langford@usdoj.gov

*Counsel for the United States of America*