UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| S.S., a minor, by his mother, S.Y., on behalf of himself and other similarly situated students; the PARENT/PROFESSIONAL ADVOCACY LEAGUE; and the DISABILITY LAW CENTER, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF SPRINGFIELD, MASSACHUSETTS; DOMENIC SARNO, in his official capacity as Mayor of City of Springfield; SPRINGFIELD PUBLIC SCHOOLS; DANIEL J. WARWICK, in his official capacity as Superintendent of Springfield Public Schools, <br><br> Defendants. | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * Civil Action No. 14-30116-MGM <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * |

MEMORANDUM AND ORDER ON DEFENDANTS'
MOTION FOR JUDGMENT ON THE PLEADINGS
(Dkt. No. 203)
July 19, 2018

MASTROIANNI, U.S.D.J.

**I. INTRODUCTION**

Following this court's rulings denying Defendants' motion to dismiss and denying Plaintiffs' motion for class certification, Defendants filed a Motion for Judgment on the Pleadings. Defendants assert in their motion, that each of the association plaintiffs, the Parent/Professional Advocacy League ("PPAL") and the Disability Law Center ("DLC"), lack standing in this case. For the reasons set forth below, the court finds the allegations in the Amended Complaint, previously detailed in the

court's order denying Defendants' Motion to Dismiss, are sufficient to establish that PPAL and DLC have associational standing in this case. Upon concluding PPAL and DLC have associational standing, the court analyzes whether concerns regarding exhaustion warrant entry of judgment on the pleadings in favor of Defendants as to these association plaintiffs. The issue of exhaustion was first raised by Defendants in the context of the standing argument and later briefed separately in response to a request by this court. For the reasons explained below the court will enter judgment for Defendants.

## II. PROCEDURAL HISTORY

On June 27, 2014, PPAL and S.S., by his mother S.Y., as an individual and representative of a proposed class of students with mental health disabilities who attend or in the future could attend the Public Day School,[1] filed this action against the City of Springfield, Springfield Public Schools ("SPS"), and the mayor of Springfield and superintendent of SPS, each in their official capacity. (Compl., Dkt. No. 1.) The one-count complaint alleged Defendants violated Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*, with respect to S.S. and members of the proposed class by failing to provide the educational programs and services that would have allowed them equal access to the educational resources offered students attending neighborhood schools.[2] Instead, the complaint alleged, SPS places members of the proposed class at the Public Day School, a school operated by SPS and attended only by students with mental health disabilities. The plaintiffs sought preliminary and permanent injunctions requiring Defendants to provide the proposed class with "the school-based behavior services they need to enjoy equal

---

[1] The court continues to use the term Public Day School to refer collectively to the elementary, middle, and high school Public Day School programs as any distinctions between them are not relevant to the court's current analysis.
[2] Neighborhood schools are elementary and middle schools which primarily enroll students based on their residential address and high schools which enroll students through the High School Choice Plan.

educational opportunity and receive educational programs and services in the most integrated setting, as required by Title II of the ADA."[3] (Compl. Dkt. No. 1, 20.) In addition to allegations related to the experiences of S.S., the complaint included allegations related to various deficiencies at the Public Day School that had been identified in reports made by the Department of Elementary and Secondary Education ("DESE").

Defendants responded by collectively filing a motion to dismiss (Dkt. No. 34) asserting that the plaintiffs had failed to "state a claim on which relief can be granted." Fed. R. Civ. P. 12(b)(6). Their central arguments were (1) the deficiencies identified in the DESE reports were not a sufficient basis for the ADA claim and (2) the ADA claim was not properly brought because (a) S.S. had failed to first exhaust administrative remedies and/or (b) the private right of action established under the ADA was not applicable to the plaintiffs' claim. Additionally, Defendants argued the claims against the individual defendants should be dismissed because individuals are not subject to suit under the ADA. At that time, Defendants did not raise any concerns about the standing of PPAL.

After the plaintiffs opposed the motion, but before the court issued its ruling, the plaintiffs sought leave to file an amended complaint including DLC as an additional plaintiff; adding allegations about a second student and member of the proposed class, N.D.; adding factual allegations related to events occurring after the suit was filed; and adjusting the definition of the proposed class. (Dkt. No. 48.) The Amended Complaint also removed allegations related to violations allegedly identified in DESE reports. (Dkt. No. 49-2). Defendants opposed the motion on various grounds. However, rather than challenging the standing of DLC at that time, Defendants explicitly "reserved the right" to challenge standing at a later stage. (Dkt. No. 50.)

---

[3] Plaintiffs also sought an order permitting the case to be litigated as a class action, declaratory judgment that the defendants had violated Title II with respect to the proposed class, and an award of attorneys' fees and costs.

This court allowed the filing of the Amended Complaint. (Dkt. No. 53.) Plaintiffs subsequently filed a sur-reply to the motion to dismiss, but neither party asked to otherwise supplement the briefing on the motion to dismiss following the filing of the Amended Complaint. After holding a hearing on the matter, the court denied the motion to dismiss, except as to the claims asserted against individual defendants. Consistent with the arguments made by Defendants, the court focused its analysis on the legal sufficiency of the specific claims made by S.S., including legal questions regarding the limits the Individuals with Disabilities in Education Act ("IDEA") imposes on efforts to bring an ADA claim related to the provision of educational services in a public school setting. The IDEA requires states to provide "[a] free appropriate public education [("FAPE")] to all children with disabilities" and also requires that, "[t]o the maximum extent appropriate" children with disabilities receive FAPE in the least restrictive environment ("LRE").[4] 20 U.S.C. § 1412(a). The IDEA also includes language specifically stating the rights it provides do not supersede rights that might otherwise be available pursuant to other statutes. 20 U.S.C. § 1415(l). However, before a litigant can file suit under another statute in order to seek a remedy available under the IDEA, they must first exhaust the IDEA administrative process. *Id.*

Central to the parties' arguments was whether Plaintiffs' ADA claims were simply disguised IDEA claims. Defendants argued this was the case and, therefore, IDEA exhaustion was not only required, but proper exhaustion necessarily included an appeal of the administrative ruling finding no IDEA violation. Plaintiffs countered they sought relief for conduct that violated only the ADA and since they were not alleging any violation of the IDEA, administrative exhaustion did not require them to appeal the administrative ruling applying the IDEA. Though the statutory language

---

[4] In order to meet the LRE requirement, children with disabilities must be educated together with children without disabilities unless "the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily." 20 U.S.C. § 1412(a)(5).

is easily recited, its application in this case was not self-evident. Relying on the First Circuit's decision in *Frazier v. Fairhaven School Committee*, 276 F.3d 52 (1st Cir. 2002), this court concluded that since exhaustion is required "though a party might seek relief that 'is not available in the administrative venue,'" Plaintiffs were required to exhaust the IDEA administrative procedures, even if the specific relief sought could not be provided through that process. *S.S. v. City of Springfield ("S.S. I")*, 146 F. Supp. 3d 414, 418 (D. Mass. 2015). This court went on to conclude that S.S. had fulfilled the exhaustion requirement by proceeding through a hearing before the Massachusetts Board of Special Education Appeals ("BSEA") and was not required to also bring an IDEA claim appealing the BSEA's decision in order to proceed with the ADA claim.

Following this court's ruling denying Defendants' motion to dismiss as to the Springfield defendants, Plaintiffs filed a motion for certification of the proposed class. In deciding that motion, this court once again considered the question of exhaustion in light of the First Circuit's decision in *Frazier* and determined that because the claims of the putative class members "concern[ed] the delivery of services to students whose educational programs are governed by [individualized education programs ("IEPs")],"[5] the exhaustion requirement applied to each member of the putative class. *Springfield (S.S. II)*, 318 F.R.D. 210, 222 (D. Mass. 2016). As Plaintiffs conceded that putative class members, other than S.S., had not exhausted the remedies available under the IDEA, the court found exhaustion was one basis for denying the motion to certify the class. *Id.* at 223-24. Following the court's denial of the motion for class certification, Defendants filed the instant Motion for Judgment on the Pleadings. Defendants seek entry of judgment against PPAL and DLC, on the grounds that they lack standing to participate in this action.

---

[5] Under the IDEA, "as a condition for receiving federal funds, states must provide all disabled children with a FAPE" and IEPs are "[t]he primary vehicle for delivery of a FAPE." *Lessard v. Wilton-Lyndeborough Coop. Sch. Dist.*, 518 F.3d, 18, 23 (1st Cir. 2008); *see also* 20 U.S.C. §§ 1401(8), 1412(a)(1)(A, 1414(d)(1)(A).

5

Since the motion was filed, S.S. has been voluntarily dismissed from this case, leaving PPAL and DLC as the only plaintiffs. In the course of arguing that Plaintiffs lack standing, Defendants raised concerns about IDEA exhaustion. As the court had not previously considered how the IDEA exhaustion requirement applied to PPAL and DLC, the court requested the parties submit supplemental briefing as to whether IDEA exhaustion is required before the ADA claim advanced by PPAL and DLC can be brought.

### III. STANDING

"Article III of the Constitution confines the judicial power of federal courts to deciding actual 'Cases' or 'Controversies.'" *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013). As a result, "any person invoking the power of a federal court must demonstrate standing to do so." *Id.* "[B]ecause standing is a prerequisite to a federal court's subject matter jurisdiction, the absence of standing may be raised at any stage of a case." *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 730 (1st Cir. 2016); *see also Pollard v. Law Office of Mandy L. Spaulding*, 766 F.3d 98, 101 (1st Cir. 2014) ("[W]hether a plaintiff has Article III standing implicates a federal court's subject-matter jurisdiction and, thus, must be resolved no matter how tardily the question is raised."). As there has already been a motion to dismiss, Defendants have labeled their filing as a motion for judgment on the pleadings and invoke Federal Rule of Civil Procedure 12(c), rather than 12(b)(1).

Generally, "'[a] motion for judgment on the pleadings [under Rule 12(c)] is treated much like a Rule 12(b)(6) motion to dismiss,' with the court viewing 'the facts contained in the pleadings in the light most favorable to the nonmovant and draw[ing] all reasonable inferences therefrom.'" *In re Loestrin 24 Fe Antitrust Litig.*, 814 F.3d 538, 549 (1st Cir. 2016) (alterations in original) (quoting *Pérez-Acevedo v. Rivero-Cubano,* 520 F.3d 26, 29 (1st Cir. 2008)). At the pleading stage, the same "plausibility standard applicable under Rule 12(b)(6)" applies to standing determinations. *Hochendoner*, 823 F.3d at

730. As a result, "the plaintiff bears the burden of establishing sufficient factual matter to plausibly demonstrate . . . standing to bring the action." *Id.* Because "[t]he standing inquiry is both plaintiff-specific and claim-specific," PPAL and DLC must demonstrate they each have standing in their own right in order to continue as plaintiffs in this case. *Pagán v. Calderón*, 448 F.3d 16, 26 (1st Cir. 2006).[6]

"The doctrine of standing is of both constitutional and prudential dimension." *Mangual v. Rotger-Sabat*, 317 F.3d 45, 56 (1st Cir. 2003). In order to establish standing, "a plaintiff must show that '(1) he or she has suffered some actual or threatened injury as a result of the challenged conduct; (2) the injury can be fairly traced to that conduct; and (3) the injury likely will be redressed by a favorable decision from the court.'" *Id.* (quoting *N.H. Right to Life PAC. v. Gardner*, 99 F.3d 8, 13 (1st Cir. 1996)). While these requirements generally prevent a litigant from bringing a claim based on harms experienced by others, under the doctrine of associational standing "an organization may sue to redress its members' injuries, even without a showing of injury to the association itself."

---

[6] Plaintiffs have argued the opposite, that they need only show that one named plaintiff has standing for the court to have subject matter jurisdiction over the entire case. However, while "[i]t is a settled principle that when one of several co-parties (all of whom make similar arguments) has standing, an appellate court need not verify the independent standing of the others," a district court cannot ignore a standing challenge when considering a case in the first instance. *Compare Houlton Citizens' Coal. v. Town of Houlton*, 175 F.3d 178, 183 (1st Cir. 1999)(ending standing analysis after concluding one appellant had standing to challenge lower court order); *Horne v. Flores*, 557 U.S. 433 (2009) (stating the Court need only assure itself that at least one petitioner had standing when hearing an appeal that "implicate[d] the [lower court] orders in their entirety"); *Massachusetts v. E.P.A.*, 549 U.S. 497 (2007) (noting the Court need only find one petitioner has standing to consider appeal of a lower court order denying a petition for review of a federal administrative order); *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 263 (1977) (recognizing standing of individual plaintiff sufficient basis for court's jurisdiction over appeal of lower court order without requiring court to resolve prudential questions related to associational standing of association plaintiff) *with Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (stating plaintiff "bears the burden of showing that he has standing for each type of relief sought) and *Pagan*, 448 F. 3d at 326 ("The standing inquiry is both plaintiff-specific and claim-specific."). Applied at this stage, the approach advocated by Plaintiffs would permit a district court to simply ignore the issue of standing in any case where at least one plaintiff clearly has standing. This result would clearly violate Article III.

.

*United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 552 (1996). Organizations seeking to establish standing "must clearly allege facts demonstrating standing; [the court] then construe[s] those facts and reasonable inferences drawn from them in plaintiffs' favor." *Animal Welfare Inst. v. Martin*, 623 F.3d 19, 25 (1st Cir. 2010).

"[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 343 (1977). Though the first two of these elements are required by Article III, the third element is prudential only – a court-constructed limit on the exercise of jurisdiction to prevent actions that would "fail[] to resolve the claims of the individuals ultimately interested." *Brown Group*, 517 U.S. at 558. DLC additionally argues that Congress has abrogated the third element as to claims brought by protection and advocacy organizations, including DLC, created under the Protection and Advocacy for Individuals with Mental Illness Act, 42 U.S.C. § 10801 *et seq.*, ("PAIMI Act").

Turning to the first two elements, the court considers whether the Amended Complaint adequately establishes that PPAL and DLC have at least one constituent with individual standing to sue and whether efforts to support the educational needs of students attending the Springfield Day School are germane to the each organization's core purposes.[7] *Animal Welfare*, 623 F.3d at 25. As the plaintiffs, PPAL and DLC have the burden of showing at least one constituent (1) "suffered some actual or threatened injury" that (2) "can fairly be traced" to the failure of SPS to provide the school-based behavioral services ("SBBS") PPAL and DLC seek, and (3) that "injury likely will be redressed

---

[7] For purposes of the standing inquiry, this court considers the "defined and discrete constituency" of each organization to occupy the same position as formal members. *Sexual Minorities Uganda v. Lively*, 960 F. Supp. 2d 304, 326 (D. Mass. 2013) (citing *NAACP v. Harris*, 567 F. Supp. 637, 640 (D. Mass. 1983)).

8

by a favorable decision from the court." *Mangual*, 317 F.3d at 56 (quoting *N.H. Right to Life PAC. v. Gardner*, 99 F.3d 8, 13 (1st Cir. 1996). The Amended Complaint identifies two individual students who were allegedly harmed by being placed at the Springfield Public Day School: S.S. and N.D., both of whom were constituents of PPAL and DLC at the time the Amended Complaint was filed. The court finds the allegations in the Amended Complaint sufficiently assert that each of these students suffered an actual injury as a result of attending the Public Day School, they would have attended neighborhood schools had SBBS been available, and their educational needs would have been better met at neighborhood schools offering SBBS. Additionally, the involvement of both PPAL and DLC in this litigation, and its attempt to secure access to better educational services for a set of constituents, is consistent with the core purposes each organization serves.

This brings the court to the third requirement for associational standing, that the "individual members' participation is not necessary to either the claim asserted or the relief requested." *Animal Welfare*, 623 F.3d at 25. As noted above, unlike the first two requirements, this third requirement does not arise from Article III of the Constitution. Instead, the courts created this requirement to address "matters of administrative convenience and efficiency." *Brown Group*, 517 U.S. at 556. Again referencing this court's decision to deny class certification, Defendants argue this third prong weighs against PPAL and DLC establishing associational standing because the relevant harms, if any, suffered by their constituents require individualized remedies. Defendants also point to the court's earlier ruling finding exhaustion was required and assert relief is unavailable for any constituent who has not exhausted. In response, Plaintiffs argue the relief they request can be granted without the participation of individual constituents and, therefore, this third prong is satisfied. Additionally, Plaintiffs argue that Congress abrogated application of this third prong to the DLC through statutes which authorize DLC to seek legal remedies for its constituents.

This court's denial of the motion for class certification followed a probing review of submissions from both parties that went well beyond the amended complaint. That review led the court to determine class certification was not appropriate because Plaintiffs had not demonstrated the members of the proposed class had suffered the same injury and a common remedy would apply to the whole class. The court also declined to certify the class because of its concerns regarding the application of the IDEA exhaustion requirement. While these conclusions raise substantive questions about the viability of the claims brought by PPAL and DLC, they do not, and should not, have a direct bearing on the threshold issue of standing. For this reason, the court assesses the third element of associational standing in the context of the allegations made in the Amended Complaint. As presented there, PPAL and DLC seek prospective relief to address an alleged problem that has caused the same harm to a group of their constituents and, therefore, does not require the participation of individual students. Viewed in this way, the court cannot conclude that the prudential concerns underlying the third element provide a basis for finding that PPAL and DLC lack associational standing.

## IV.  EXHAUSTION

The court has addressed the IDEA exhaustion requirement in each of its previous decisions in this case, first its application to the individual claims of S.S. and then the relevance of the requirement when claims were asserted for the prospective class. Defendants' motion raised the question of how the IDEA exhaustion requirement applies to PPAL and DLC in the context of their standing argument. As discussed above, the court disagrees with Defendants' arguments that the general absence of exhaustion by constituents of PPAL and DLC prevents PPAL and DLC from having standing. However, as discussed in the court's prior opinions, IDEA exhaustion, when required, is a necessary prerequisite to bringing a claim pursuant to the ADA. As S.S., the only

constituent PPAL and DLC has ever identified as having exhausted IDEA remedies, is no longer a party to this case or a constituent of PPAL and DLC, the court finds it appropriate to consider whether the IDEA exhaustion requirement warrants entry of judgment on the pleadings. *See e.g. U.S. Nat. Bank of Oregon v. Independent Ins. Agents of America, Inc.*, 508 U.S. 439, 446 (1993) ("[A] court may consider an issue 'antecedent to ... and ultimately dispositive of' the dispute before it, even an issue the parties fail to identify and brief.") (quoting *Arcadia v. Ohio Power Co.*, 498 U.S. 73, 77 (1990)). The court, therefore, invited the parties to file supplemental briefs addressing the application of the IDEA exhaustion requirement, independent of the standing analysis.

Under the IDEA, parties must exhaust the available administrative remedies before filing a civil action under another law if the parties are "seeking relief that is also available under [IDEA]." 20 U.S.C. § 1415(*l*). The First Circuit has ruled the exhaustion requirement is not absolute and, therefore, it is not determinative of a court's subject matter jurisdiction to hear a case, but rather is a condition precedent to entering federal court. *Frazier*, 276 F.3d at 59. As a result, where IDEA exhaustion is required, a plaintiff who has not exhausted cannot proceed with an ADA claim. See *id.*

When determining whether exhaustion is required in a particular case, courts have struggled to articulate a balanced analytic approach that does not undercut the exhaustion requirement and does not improperly burden litigants asserting claims under other statutes. In the ruling on class certification this court, extrapolating from the First Circuit's ruling in *Frazier*, concluded that exhaustion is required in this case because the benefits that accrue from exhaustion, notably the development of an administrative record by a state agency with specialized knowledge, would assist the court's consideration of the claim brought under the ADA, even though, as in *Frazier,* the exact remedy sought was not available through the IDEA administrative process. *S.S. II*, 318 F.R.D. at 221-22. The court considered whether an exception to the exhaustion requirement could apply in an action seeking relief for a class. *Id.* at 221. The court found no basis for an exception applicable

simply because a case is framed as a class action. *Id.* Additionally, the court found that the underlying purposes of the exhaustion requirement, which are to ensure that prior to litigation educational agencies have an opportunity to address problems with the formulation or implementation of a student's IEP and educational professionals create an evidentiary record, are relevant in this case. *Id.* at 221-22.

After this court reached the conclusion that IDEA exhaustion is required in this particular case, the Supreme Court provided additional guidance as to how courts should decide whether IDEA exhaustion is required before a claim may be litigated under the ADA. *Fry v. Napoleon Community Schools*, 137 S. Ct. 743 (2017). Specifically, the Supreme Court has confirmed that IDEA exhaustion is only required if the suit asserted under another statute "seek[s] relief for the denial of a FAPE, because that is the only 'relief' the IDEA makes 'available.'" *Id.* at 752. In order to determine whether a suit seeks relief for the denial of a FAPE, the Supreme Court advises courts to "consider substance not surface," and ask two hypothetical questions: "could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school . . . [a]nd second, could an *adult* at the school . . . have pressed essentially the same grievance." *Id.* at 755, 56 (emphasis in original). If the answers to these hypotheticals are no, then, the Supreme Court advises, "the complaint probably does concern a FAPE" and exhaustion is required.[8] *Id.* at 756.

---

[8] Left unresolved by the *Fry* ruling is the question of whether exhaustion is required when a student complains of a violation of FAPE but seeks a remedy that cannot be provided by the IDEA administrative process, such as an award of monetary damages. In the absence of clarification of this point from the Supreme Court, this court continues to follow the approach taken by the First Circuit in *Frazier*, which is to require exhaustion, even if monetary damages are sought, because the ultimate determination as to the appropriateness of monetary damages will be informed by the administrative record assembled during the exhaustion of IDEA procedural remedies. Regardless, Plaintiffs here are not claiming the alleged ADA violations deprived any of their constituents of a FAPE, nor are they seeking money damages.

Plaintiffs assert their case is an "equal access" case, rather than one seeking FAPE, yet when these two hypotheticals are asked of the ADA claim in this case, the answer to both is clearly no.[9] The court can think of no other public facility where the ADA would require provision of the range of services Plaintiffs seek, nor can the court imagine a situation in which a school would be required to provide such services to an adult at the school. Applying these hypothetical questions to this case clarifies that the IDEA exhaustion requirement applies here and that a plaintiff who cannot demonstrate IDEA exhaustion of its claim cannot state a valid claim for relief under the ADA.

PPAL and DLC argue an exception to the exhaustion requirement should be made for them because (1) IDEA administrative remedies are available only to students' families and local educational authorities, not entities like PPAL and DLC, (2) any such exhaustion would be futile

---

[9] Plaintiffs cite two cases decided since *Fry* in which courts found exhaustion was not required and argue for a similar outcome here. Not only are these cases from other circuits and their analysis not binding on this court, but both of those cases are distinguishable from this case in important respects. In *J.S., III by & through J.S. Jr. v. Houston Cty. Bd. of Educ.*, the parents of a student who was removed by a paraprofessional from his classroom to an isolated area in violation of his IEP and subjected to verbal and physical abuse by that same individual sued the school district, without first exhausting under IDEA. 877 F.3d 979 (11th Cir. 2017). The Eleventh Circuit noted that the case did not "fit neatly into *Fry's* hypotheticals" and found exhaustion was not required because the plaintiff had presented sufficient evidence that the student had been removed from his classroom for discriminatory reasons that had "no purpose related to his education." *Id.* at 986. In this case, Plaintiffs have not challenged that students were placed at the Public Day School pursuant to IEPs which met the requirements of IDEA, meaning they provided FAPE in the LRE. Thus, the reason any student was placed at the Public Day School was directly related to the student's education. Additionally, since neighborhood schools necessarily are less restrictive environments than the separate Public Day School, the placement of a student at the Public Day School only complied with the IDEA if it was first determined that a student could not receive FAPE in the neighborhood school, even "with the use of supplementary aids and services." 20 U.S.C. § 1412(l). These facts also distinguish this case from the other case cited by Plaintiffs, *Abraham P. v. Los Angeles Unified Sch. Dist.*, No. CV 17-3105-GW (FFMx), 2017 WL 4839071 (C.D. Cal. Oct. 5, 2017). In *Abraham P.*, a disabled student was subjected to physical abuse that was allowed to continue even after the student's parents complained and the abuse interfered with the student's ability to access his educational program. *Id.* at *4. In finding plaintiff did not seek redress for failure to provide FAPE and, therefore, was not required to exhaust, the court observed that the amended complaint indicated the student was doing well and did not need additional education services, demonstrating that his suit was about damages for past discrimination rather than a remedy for a denial of FAPE. In this case, the remedy sought by Plaintiff is the provision of an array of new services necessary to allow students to receive FAPE in their neighborhood schools.

13

because the relief sought is not available through the IDEA administrative process, and (3), in the case of DLC, any exhaustion requirement is abrogated for Protection and Advocacy groups seeking systemic remedies. These arguments are not persuasive because each is premised on the assumption that PPAL and DLC are, in fact, seeking systemic relief for a failure to provide services unrelated to the provision FAPE to a particular group of students. The court sees the situation differently.

In the context of this case, whether the ADA requires something more than the IDEA cannot be determined without consideration of what the IDEA requires. The IDEA sets up a detailed system for ensuring that disabled students receive individualized educational services and the exhaustion requirement ensures that courts asked to make determinations about whether a student has received FAPE in the LRE have the benefit of an administrative record assembled by educational experts. At the motion to dismiss stage, this court narrowly determined dismissal was not appropriate because a gap exists between the requirements of the IDEA and those of the ADA. The court observed that in the context of S.S., such a gap could exist only if the ADA required some support, as a reasonable accommodation, that would have enabled S.S. to attend a neighborhood school and receive FAPE, but that was not required under the IDEA. *S.S. I*, 146 F. Supp.3d at 424. While the court expressed some doubt as to whether such a gap could be ultimately be shown, the Amended Complaint had adequately pleaded facts from which the court could infer there were services which could be required by the ADA, but not the IDEA, that would enable S.S. to attend a neighborhood school. The administrative record from S.S.'s BSEA appeal would clearly be relevant to making such a determination.

Though S.S. is no longer a party to this litigation, the needs served by the exhaustion requirement are still relevant. As set out in the Amended Complaint, the relief sought by PPAL and DLC is closely related to questions about the provision of FAPE to their constituents. As a result,

IDEA exhaustion is required. In the absence of such exhaustion, PPAL and DLC are unable to state a claim for relief under the ADA.[10]

### V. CONCLUSION

For the reasons discussed above, the court finds PPAL and DLC have associational standing, but grants Defendants' Motion for Judgment on the Pleadings based on the absence of IDEA exhaustion.

It is So Ordered.

                                                                /s/ Mark G. Mastroianni
                                                                 MARK G. MASTROIANNI
                                                                 United States District Judge

---

[10] Quite possibly the court would reach a different conclusion if, for example, PPAL and DLC alleged SPS was preventing them from assisting specific families seeking to determine whether their children were receiving appropriate services or that there was a pattern or practice that was preventing a large group of students from receiving FAPE in the LRE. *See Michigan Prot. & Advocacy Serv., Inc. v. Flint Cmty. Sch.*, 146 F. Supp. 3d 897 (E.D. Mich. 2015) (ruling IDEA exhaustion requirement inapplicable to claims brought by a protection and advocacy organization after not receiving timely responses to requests for educational records for certain students, submitted with parental consent forms); *New Jersey Prot. & Advocacy, Inc. v. New Jersey Dep't of Educ.*, 563 F. Supp. 2d 474 (D.N.J. 2008) (ruling IDEA exhaustion not required because the claims made by statewide advocacy organizations did not seek "individual remedies necessary to make themselves or their constituents whole."). PPAL and DLC, however, have not made such claims.